IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MURRAY STANFORD,

    Petitioner,                            No. CIV S-10-438 FCD CHS

    vs.

WARDEN GONZALEZ,

    Respondent.                 FINDINGS AND RECOMMENDATIONS

                                        /

## I.  INTRODUCTION

Petitioner Stanford, a state prisoner, proceeds pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner stands convicted of conspiracy to sell rock cocaine in the Sacramento County Superior Court, case number 06F08729, for which he is currently serving an indeterminate prison term of 25 years to life plus a consecutive aggregate term of four years.

## II.  BACKGROUND[1]

On September 23, 2006, petitioner was arrested on charges unrelated to those challenged in the pending petition.  He entered into a plea bargain and pleaded guilty.  While in

---

[1] *See People v. Mamaril*, No. C058468, 2009 WL 1177057 (Cal. Ct. of App. 3rd Dist. May 4, 2009).

1

jail expecting transfer to prison to serve the agreed upon term, he devised a scheme to raise money for his prison account. Co-defendant Rudy Mamaril, an old friend, and Taneshia Carter, a "street-level dealer," were to sell drugs obtained from petitioner's associates, put a share of the proceeds on his books, and keep the rest. The conspirators discussed and implemented the scheme in part through coded conversations at the jail which were recorded. Mamaril and Carter obtained rock cocaine and sold it in furtherance of the conspiracy.

On October 5, 2006, Carter was arrested on an unrelated conspiracy to sell rock cocaine (a different one than that she engaged in with petitioner and Mamaril). In exchange for pleading guilty to that unrelated charge and testifying truthfully against petitioner and Mamaril regarding their conspiracy, she was promised a maximum sentence of one year in county jail and five years of probation for the unrelated case.

Petitioner and co-defendant Mamaril were charged with conspiracy to sell rock cocaine. At trial, the prosecution played the taped jail conversations, with transcripts furnished to the jury, and Carter testified about their contents. Neither co-defendant testified. A jury convicted both of conspiracy.

In a bifurcated proceeding, the trial court found the prior prison allegations against petitioner constituted a single enhancement, and found the remaining prior conviction allegations true. After denying his motion for a new trial and motion to strike prior convictions, the court sentenced him to 25 years to life under the "three strikes law" for the conspiracy, plus three years consecutive years for the prior drug conviction, plus one consecutive year for the prior prison term.

The California Court of Appeal, Third District, affirmed the judgment and sentence. A petition for review to the California Supreme Court was denied. Petitioner sought habeas corpus relief in state court where relief was likewise denied. The parties agree that petitioner exhausted state court remedies with respect to the claims presented. Respondent contends, however, that ground one of the petition is procedurally barred.

## III. GROUNDS FOR RELIEF

Ground One: The true findings on petitioner's prior serious felony allegations and use as sentence enhancements constituted a breach of his 1994 plea agreement.

Ground Two: Insufficient evidence supports the conspiracy conviction.

## IV. APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999). Under AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

This court looks to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919. The state court's factual findings are presumed correct if not rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Taylor v. Maddox*, 336 F.3d 992, 1000 (9th Cir. 2004). It is

the habeas corpus petitioner's burden to show the state court's decision was either contrary to or an unreasonable application of federal law. *Woodford v. Visciotti*, 537 U.S. 19, 123 S. Ct. 357, 360 (2002).

## V.  DISCUSSION

### A.  Ground One: Breach of Plea

Petitioner claims the trial court's use of his prior serious felony offenses and prior prison term as sentence enhancements breached the terms of his 1994 plea agreement, in violation of his right to due process. Respondent contends that this claim is barred for his failure to raise it on direct appeal and for the state court's rejection of it on habeas corpus on an independent and adequate state law ground. Presented with this claim in a petition for writ of habeas corpus, the California Court of Appeal held:

> The petition for writ of habeas corpus is denied. (*In re Harris* (1993) 5 Cal.4th 813, 826-827 ['"It is well settled that a writ of habeas corpus ordinarily may not be employed as a substitute for an appeal'"]; see also *In re Seeley* (1946) 29 Cal.2d 294, 294 [habeas corpus generally unavailable where there exists a remedy by appeal].)

In re Murray Stanford, No. C061255, Order Denying Petition (Cal. Ct. of App., 3rd App. Dist. March 12, 2009).

The superior court's citation to *In re Harris* in its order denying the petition for writ of habeas corpus was an invocation of California's procedural bar for claims presented by habeas corpus which could have been, but were not, presented on direct appeal. This rule, sometimes referred to as the *Dixon* rule, "bars California state courts from granting habeas relief to a prisoner who failed to pursue the claims raised in his habeas petition on direct appeal from his conviction, unless his claims fall within an exception to the rule." *La Crosse v. Kernan*, 244 F.3d 702, 705 n.11 (9th Cir. 2001) (quoting *In re Dixon*, 41 Cal.2d 756 (1953)); *see also Park v. California*, 202 F.3d 1146, 1152 (explaining relationship between *In re Harris* and *In re Dixon*).

/////

As a general rule, a federal habeas court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). In order for a state procedural rule to be found independent, the state law basis for the decision must not be interwoven with federal law. *LaCrosse v. Kernan,* 244 F.3d 702, 704 (9th Cir. 2001). To be deemed adequate, the rule must be well established and consistently applied. *Poland v. Stewart*, 169 F.3d 575, 577 (9th Cir. 1999). An exception to the general rule exists if the prisoner can demonstrate either cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

Once the state has pleaded the existence of an independent and adequate state procedural ground as an affirmative defense, as respondent has in this case, the burden shifts to petitioner to place the adequacy of that procedural rule in issue. *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003). In order to do so, petitioner must "assert[ ] specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Bennett*, 322 F.3d at 586. Thereafter, the state retains the ultimate burden of proving adequacy of the asserted bar. *Id*. at 585-86.

Here, petitioner fails to meet his burden of citing authority demonstrating the inadequacy of California's rule barring claims on habeas corpus that could have been, but were not, raised on direct appeal. Instead, he argues he should be excused from the default.

"[A] federal habeas petitioner who has failed to comply with a State's [procedural rule] must show cause for the procedural default and prejudice attributable thereto in order to obtain review of his defaulted constitutional claim." *Murray v. Carrier*, 477 U.S. 478, 485 (1986) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). Satisfying the "cause" factor typically requires a petitioner to show that some objective factor external to the defense impeded

5

his effort to comply with California's untimeliness rule. *Carrier*, 477 U.S. at 488. Ineffective assistance of counsel will suffice to show case if it was so ineffective as to violate the Federal Constitution. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Carrier*, 477 U.S. at 486-88). Such a claim of ineffective assistance must be presented to the state courts as an independent claim, however, before it may be used to establish cause for a procedural default. *Id*. (citing *Carrier*, 477 U.S. at 489.) A defaulted claim of ineffective assistance of counsel cannot be the basis for cause, unless the petitioner can establish cause and prejudice with respect to the ineffectiveness claim itself. *Edwards*, 529 U.S. at 451-54.

Under this standard, petitioner fails to demonstrate cause. Petitioner argues that he should be excused for his default because although he used a petition for writ of habeas corpus form, he intended the document filed on March 5, 2009 to be "an "Appellants's Supplemental Brief" for his pending direct appeal rather than an independent petition for habeas corpus. Petitioner states that he attempted to submit his "Appellant's Supplemental Brief" pro se because appellate counsel refused to raise the issue as he requested.

Petitioner had the opportunity to file a state habeas corpus petition regarding any alleged deficiency of appellate counsel, but failed to do so. Appellate counsel's alleged deficiency in failing to raise the claims cannot therefore be used to establish cause for the procedural default. *See Edwards*, 529 U.S. at 489, 451-54. Since cause is not shown, the issue of prejudice need not be addressed. *See Smith v. Murray*, 447 U.S. 527, 533 (1986).

Petitioner further fails to demonstrate that a fundamental miscarriage of justice will result if the claims are not reviewed. His case is not one of those "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." *See McCleskey*, 499 U.S. at 494. Accordingly, this court should find that it is precluded from reviewing the merits of petitioner's procedurally defaulted claim that the state breached his prior plea bargain. *See Sawyer v. Whitley*, 505 U.S. 333, 338 (1992).

/////

B.     Ground Two: Sufficiency of the Evidence

For his second ground, petitioner claims that insufficient evidence supports his conviction for conspiracy to sell rock cocaine. In particular, petitioner argues that the uncorroborated testimony of Carter, an accomplice, provided the only evidence that he committed any of the alleged overt acts, and that the evidence was insufficient.

The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). On habeas corpus review, sufficient evidence supports a conviction so long as, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); s*ee also Prantil v. California*, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam). The focus under *Jackson* is not the correctness, but rather, the reasonableness of the state judgement. *See Hurtado v. Tucker*, 245 F.3d 7, 19 (1st Cir. 2001).

The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Davis v. Woodford*, 384 F.3d 628, 639 (9th Cir. 2004) (*quoting Jackson*, 443 U.S. at 319.) The dispositive question is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318). Under the AEDPA, the *Jackson* standard is applied with an additional layer of deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274-75 (9th Cir. 2005). The relevant question here is "whether the decision of the California Court of Appeal reflected an 'unreasonable application of' *Jackson* and *Winship* to the facts of this case." *Id*. (citing 28 U.S.C. § 2254(d)(1)).

Accepting the court of appeal's interpretation and application of state law regarding the elements of the offense as this court is required to do (*see Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus")), the record

evidence reasonably supports a finding that petitioner was guilty of conspiracy to sell rock cocaine.

Under California law,

> "Criminal conspiracy is an offense distinct from the actual commission of a criminal offense that is the object of the conspiracy." (*People v. Morante* (1999) 20 Cal.4th 403, 416 (*Morante*).) Therefore, the People do not have to prove that the defendants committed the crime that was the object of the conspiracy. (*Id.* at pp. 416-417.)
>
> The People... do not have to prove that any particular conspirator committed any particular overt act, because " " 'the act of one [conspirator] is the act of all.' " ' [Citations.]" (*Morante, supra,* 20 Cal.4th at p. 417.)

*People v. Mamaril*, *supra*, at 7.

To convict petitioner of the offense of conspiracy, the prosecution was required to prove:

1.  The defendant intended to agree and did agree with the other defendant or Taneshia Carter to sell, furnish, transport or offer to sell, furnish transport or attempt to sell, furnish or transport cocaine base;

2.  At the time of the agreement, the defendant and the other alleged members of the conspiracy intended that one or more of them would sell, furnish, transport or offer to sell, furnish, transport or attempt to sell, furnish or transport cocaine base;

3.  One of the defendants or Taneshia Carter committed at least one of the following overt acts to sell, furnish, transport, or offer to sell, furnish or transport or attempt to sell furnish or transport cocaine base: on or about and between September 23, 2006 and October 3, 2006: Overt act 1: Murray Stanford directed Rudy Mamaril to pick up his work;[2] Overt act 2: Rudy Mamaril picked up cocaine base for Murray Stanford; Overt act 3: Rudy Mamaril brought cocaine base to Taneshia Carter; Overt act 4: Murray Stanford called Taneshia Carter from jail and discussed selling cocaine base; Overt act 5: Taneshia Carter sold cocaine base for Murray Standford;

---

[2] Carter testified that "work" means rock cocaine on the street. (RT at 276.)

8

1     AND

2     4.     At least one of these overt acts was committed in California.

(Clerk's Transcript ("CT") at 869; *see also* CALCRIM No. 415.)  The jury was so instructed. (Reporter's Transcript ("RT") at 1286-87.)

The jury was further instructed that if the crime of conspiracy was committed, then Taneshia Carter was an accomplice as a matter of law (RT at 1280-81); that a defendant cannot be convicted solely on the uncorroborated testimony of an accomplice (RT at 1280-81); and that an accomplice's testimony should be viewed with caution (RT at 1281).  Further,

> You may use the testimony of an accomplice to convict the defendants only if:
>
> 1. The accomplice's testimony is supported by other evidence that you believe;
>
> 2. That supporting evidence is independent of the accomplice's testimony;
>
> AND
>
> 3. That supporting evidence tends to connect the defendants to the commission of the crime.
>
> Supporting evidence, however, may be slight.  It does not need to be enough, by itself, to prove that the defendant is guilty of the charged crime, and it does not need to support every fact about which the witness testified.  On the other hand, it is not enough if the supporting evidence merely shows that a crime was committed or the circumstances of its commission.  The supporting evidence must tend to connect the defendant to the commission of the crime.

(CT at 861; RT at 1281.)

Here, the evidence established that petitioner entered into an intentional agreement to furnish, transport, and sell rock cocaine and that at least one conspirator committed at least one of the charged overt acts.  Carter testified that she engaged in a series of telephone conversations with petitioner and Mamaril in which petitioner made arrangements for Mamaril to pick up rock cocaine belonging to petitioner and deliver it to Carter for her to sell.  (RT at 274-76, 293.)  Carter was to sell the rock cocaine and put half of the money received on petitioner's

9

"books" for commissary. (RT at 275, 293, 306.) Carter testified that Mamaril obtained the drugs and delivered them to her on two occasions. (276-77, 280, 292.)

Carter's testimony was corroborated by the tape recorded jail conversations, for which Carter identified her voice and the voices of petitioner and Mamaril, and translated various code terms they used. Several of the telephone calls were "three-way" calls, in which three parties could talk and hear each other at once. (RT at 304-05.)

In one conversation, Carter and the defendants discussed the fact that "the little broad in apartment two" (Maresha) had petitioner's "work" (rock cocaine); in another, petitioner directed Resha (Maresha) and to give "that shit" (rock cocaine) to Carter and Mamaril and then directed Mamaril to "dump it for me" (sell it). (RT at 302; CT at 899, 901-21.) Carter relayed to petitioner that Mamaril confirmed he had obtained drugs from Maresha. (RT at 331; CT at 928-32.) Multiple other conversations between petitioner and Carter referenced either the sale of drugs, putting money on petitioner's books, or both. (RT at 326-31, 333-34, 336-38, 347-52, 354-62, 392-93, 398-99; CT at 933-36, 338-39, 940-47, 949, 953-55, 963-65.) In another conversation, Carter confirmed that Mamaril had given her some rock cocaine, that she had sold it, and that she was going to put $40 on petitioner's books. (RT at 354-47; CT at 949.) A note handwritten by Mamaril was found in Carter's apartment and provided further corroboration of the conspiracy. (RT at 286-87; 656.)

Considering this evidence, the state court reasoned:

> Carter's testimony was not uncorroborated. It was strongly corroborated by the conspirators' recorded conversations and by the investigating officers' opinions, including definitions of the conversations' key terms independently derived from the officers' training and experience, that the conversations concerned drug dealing; it was also corroborated by the fact that a note fitting Carter's description of the note left by Mamaril was found in her apartment. Corroboration of an accomplice's testimony need not confirm every point therein: it need only ""substantiate[ ] enough of the accomplice's testimony to establish his credibility [citation omitted].""" (*Rodrigues, supra,* 8 Cal.4th at p. 1128, quoting *Bunyard, supra,* 45 Cal.3d at pp. 1206-1207.) The recordings showed a consistent pattern of conduct by defendants and Carter

> over the period alleged in the information, which jibed with her narrative. The officers' opinions corroborated Carter's accounts of the conversations and their terminology. Lastly, Mamaril's note was physical evidence that bore out Carter's testimony on that point and helped tie him into the conspiracy. Thus, this evidence collectively established Carter's credibility. This was sufficient corroboration.
>
> Stanford asserts that the People did not produce physical evidence of any rock cocaine bought or sold, the testimony of Maresha or anyone else who provided the drug to Carter or bought it from her, eyewitness testimony as to such sales, or evidence that Carter actually put money on Stanford's books. However, in light of the evidence we have set out above, such additional evidence was not needed to corroborate Carter's testimony. And whether Carter put money from drug sales on Stanford's books is irrelevant because a conspiracy is distinct from the offense at which it aims. (*Morante, supra,* 20 Cal.4th at pp. 416-417.)
>
> Because Stanford concedes that overt acts 2, 3, and 5 properly alleged acts in furtherance of the conspiracy, and Carter's testimony, which described the parties' acts, was corroborated, we need not decide whether overt acts 1 and 4 also constituted acts in furtherance of the conspiracy.

*People v. Mamaril*, *supra*, at 9 -10.

The state court's rejection of petitioner's sufficiency of the evidence claim on this basis is consistent with, and a reasonable application of the relevant *Jackson* standard set forth above.  Petitioner is not entitled to relief.

## VI.  CONCLUSION

For all the foregoing reasons, IT IS HEREBY RECOMMENDED that the application for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  Failure to file

1  objections within the specified time may waive the right to appeal the District Court's order.
2  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.
3  1991).
4  DATED: July 5, 2011

                                              CHARLENE H. SORRENTINO
                                              UNITED STATES MAGISTRATE JUDGE